UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In Re:<br><br>**11680 ROYAL RIDGE MOB1 SPE, LLC,**<br><br>Debtor. | **CASE NO.  22-57946-PMB**<br><br>**CHAPTER 11** |

**DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION PROPOSED BY DEBTOR 11680 ROYAL RIDGE MOB1 SPE, LLC**

## I. INTRODUCTION

This Disclosure Statement (the "**Disclosure Statement**") has been prepared pursuant to Section 1125 of the United States Bankruptcy Code on behalf 11680 ROYAL RIDGE MOB1 SPE, LLC (the "**Debtor**") in connection with the Debtor's solicitation of votes for its Plan of Reorganization dated December 30, 2022 [Doc. 26] (the "**Plan**"). It contains important information about the Debtor and the Plan.[1]

In providing this Disclosure Statement to parties in interest, the Debtor expressly seeks to enable such parties to make an informed judgment on whether to approve or reject the Plan.

This Disclosure Statement contains a summary of the Plan, general information about the Debtor and its Chapter 11 case, and important information concerning the Debtor's current financial condition and future prospects.

The information contained herein has been prepared by the Debtor in good faith, based upon information available to the Debtor. The financial information contained herein all financial information was compiled from the records of the Debtor but has not been verified by an audit.

The description of the Plan contained in this Disclosure Statement is intended as a summary only and is qualified in its entirety by reference to the Plan itself, which has been filed contemporaneously herewith. Each creditor is encouraged to read, consider, and carefully analyze the terms and provisions of the Plan.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein, and delivery of this Disclosure Statement shall not create an implication that there has been no change in the facts set forth herein since the date of this Disclosure Statement and the date the materials relied upon in preparation of this Disclosure Statement were compiled.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan, and nothing contained herein shall constitute an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtor or any other party, or be deemed conclusive advice on the tax or other legal effects of the reorganization on holders of claims or equity interests.

## II. BRIEF DISCUSSION OF CHAPTER 11 OF THE BANKRUPTCY CODE

Under Chapter 11 of the Bankruptcy Code a debtor is afforded an opportunity to rehabilitate its business and to restructure its financial obligations to its creditors. In some instances, a debtor may also change the structure of its equity securities by canceling one or more classes of equity securities or issuing new securities.

In general, a debtor files a "Chapter 11 Plan," which sets forth a proposal for settlement of the debtor's debts. A debtor's debts are classified as either being secured or unsecured, depending on whether the debtor has pledged any of its property to the creditor as collateral for the debt.

A debtor under Chapter 11 may restructure its secured debt by paying its secured creditors in cash in full or in installment payments. A debtor may also arrange for a secured creditor's collateral to be sold or surrendered.

The Bankruptcy Code requires that certain unsecured debts receive priority in payment over other debts. Examples of unsecured debts entitled to priority are expenses and fees incurred during the Chapter 11 case, certain wages and employee benefits, certain consumer obligations, and taxes.

The Bankruptcy Code requires that a plan propose full cash payment to all priority unsecured creditors except taxing authorities. Taxes under the Bankruptcy Code may be paid over time in installments. Unsecured creditors may receive payments of anywhere from 0% to 100% of their claims, in a lump sum or over time, and the percentage and timing of payments depends on many factors and varies widely from case to case.

In any event, unless the creditors agree differently, a plan must provide creditors with at least the same treatment that creditors would receive in a liquidation of the debtor's assets under Chapter 7 of the Bankruptcy Code.

The Bankruptcy Code requires that the debtor (or other plan proponent) file a plan with the Court, which be accompanied by a disclosure statement. The disclosure statement must contain a summary of the plan and sufficient information about the debtor and its financial affairs to enable a creditor or other party in interest to intelligently determine whether to vote for or against the plan.

After the plan and disclosure statement are filed, the Court may hold a hearing on the adequacy of the disclosure statement or, in a small business case, may conditionally approve the disclosure statement, with final approval to be heard at the same time as confirmation of the plan. If the Court determines that the disclosure statement makes proper disclosures, then it is approved

(or conditionally approved as the case may be), and the plan and disclosure statement, along with a ballot, are mailed to creditors and equity security holders for voting.

Typically, a date is set by the Court as the last day votes may be counted. The Court also schedules a confirmation hearing, at which time the Court hears evidence as to whether the plan complies with various standards for confirmation under the Bankruptcy Code, including whether sufficient votes have been cast accepting the plan from classes of creditors whose rights have been "impaired" by the plan (*i.e.*, creditors not receiving precisely the same rights they were entitled under their contracts with the debtor). Only ballots that are properly submitted are counted, so if a creditor does not vote, they are simply not counted in either the acceptance or rejection tallies.

There are two ways that a plan may be confirmed by the Court. First, the plan may be confirmed if all the impaired classes vote to accept the plan, with a simple majority in number of creditors in the impaired class voting to accept, but they must also hold claims totaling at least 2/3 of the value of all of the claims in that class that voted.

Alternatively, if a class of impaired creditors does not accept the plan, then the plan may still be confirmed if it is "fair and equitable" respecting such class. The Bankruptcy Code defines "fair and equitable" regarding unsecured creditors as generally meaning payment of the entire amount of each creditor's claim or that no class of creditors or interest holders with a lesser priority will receive any compensation under the plan. Regarding secured creditors, "fair and equitable" generally means that the creditor receives the "indubitable equivalent" of its secured claim or cash or deferred payments with a present value equal to the amount of the secured claim. When a Court confirms a plan notwithstanding the lack of acceptance of all impaired classes, it is said that the debtor has achieved a "cramdown" of the plan.

When a debtor's plan is confirmed, the debtor receives a discharge or release of all indebtedness which it does not pay under the provisions of the plan. The discharge applies whether or not a creditor received notice of the Chapter 11 proceeding and applies even to creditors who voted against the plan.

### III.  BACKGROUND CONCERNING THE DEBTOR

**A.    Pre-bankruptcy History of the Debtor**

The Debtor is a Georgia-based company that owns a commercial rental property located at 11680 Great Oaks Way, Alpharetta, Georgia 30022 (the "**Property**" and the "**Business**"). The Property is a medical office building. 11680 Royal Ridge MEZZ, LLC (the "**Sole Member**") is the Sole Member and Manager of the Debtor. 11680 Royal Ridge JV, LLC is the Manager of the Sole Member (the "**Sole Member's Manager**"). Scott Honan is the Manager of the Sole Member's Manager. Mr. Honan has over 22 years of experience successfully managing medical office buildings in metro Atlanta, Texas, Florida, and Tennessee.

The Property was in foreclosure when the Debtor began negotiating the acquisition from the previous owner. The Debtor acquired the Property in February 2021. At the time the Property was empty and unfinished. The Debtor finished the Property, but due to the uncertainty caused by the Covid-19 pandemic medical office tenants were hesitant to enter into new leases. In order to

entice tenants to move into the Property under such conditions the Debtor offered very generous rent abatements. The Debtor has secured tenants for over 50% of the Property, but none of the tenants have begun paying rent yet. The first rent payments to the Debtor are due in February 2023.

The Debtor was unable to maintain debt service payments to its primary secured creditor, RGA Real Estate Holdings, LLC ("**RGA**"). RGA scheduled the Property for an October 2022 foreclosure sale. In order to stop the sale and preserve the value of the Property, the Debtor was forced to file for chapter 11 protection.

**B.     Summary of Activities in the Debtor's Chapter 11 Case**

On, October 3, 2022 (the "**Petition Date**"), the Debtor filed a petition under Chapter 11 of the Bankruptcy Code, commencing this bankruptcy case. The case is pending before the Honorable Paul M. Baisier, Judge for the United States Bankruptcy Court, Northern District of Georgia (the "**Court**").  The Debtor has continued in possession of its assets, and no trustee has been appointed in the case.

The Debtor has worked diligently since the Petition Date to comply with all of the requirements of being a Debtor in Possession, as well as to run the Business and to pursue a refinance of the Property. The Debtor has now secured a refinance, which will allow the Debtor to pay its creditors in full and emerge from bankruptcy successfully. The refinance is discussed in more detail in Section VII of the Disclosure Statement below.

## IV.    SUMMARY OF THE PLAN

The plan provides for the payment in full of all secured, priority, and general unsecured claims (except for the claims of the Honan Entities) and retention of equity interests in the Debtor as set forth below:

**A.     Priority Claims**

The Plan provides for the satisfaction of all allowed administrative claims on the Effective Date, unless otherwise agreed by the holder of such claim. As to each administrative claim allowed thereafter, payment will be made as soon as practicable.  The Plan also provides for the satisfaction of all priority tax indebtedness on the Effective Date.

**B.     Claim of RGA**

RGA holds a first-priority security interest in the Property. The Debtor estimates the RGA claim to be approximately $18,875,510.35 as of the Petition Date. The Debtor proposes to pay the payoff as of the Effective Date to RGA in full on the Effective Date.

**C.     Claim of Royal 400 Property Owner's Association, Inc.**

Royal 400 Property Owner's Association, Inc. (the "**Association**") is a secured creditor by virtue of an assessment lien. The Association filed proof of claim no. 1 in the amount of $8,602.30. The Debtor proposes to pay the secured claim of the Association with post-petition interest in full on the Effective Date.

  D.  **General Unsecured Creditors**

The Debtor estimates, based on its schedules and proofs of claims that have been filed, that there will be approximately $283,107.23 in allowed general unsecured claims, excluding the Honan Entities. The Debtor proposes to pay General Unsecured Claims with post-petition interest in full on the Effective Date. See **Exhibit A** hereto for the Debtor's estimate of general unsecured claims.

  E.  **The Honan Entities**

On its Schedule F [Doc. 18], the Debtor listed unsecured debts owed to Honan Traywick, LLC and Honan Preferred Equity, LLC, both of which are controlled by Mr. Honan. While the Debtor does not believe that these entities meet the statutory definition of insiders, the Debtor is excluding these claims from Class 3 General Unsecured Claims and the Honan Entities are waiving any claims they have against the Debtor.

  F.  **Equity Interests**

The Reorganized Debtor shall not make any distributions or pay any dividends related to any Equity Interests unless and until all distributions related to all Allowed Claims in Classes 1-3 have been made in full as set forth herein.

  G.  **Valuation of Assets and Collateral**

Mr. Honan provided values for the Debtor's assets based on his experience in the industry as of the filing of the Plan and Disclosure Statement. The Debtor has not conducted an auction with respect to its assets because the Debtor believes such a process and the administrative and transactional costs related thereto would cause its estate to incur significant additional costs without a corresponding benefit to creditors. The Debtor believes that the amounts which will be generated by the Debtor's ongoing business are greater than the net proceeds that would be obtained through any such auction. Accordingly, the Debtor submits that the asset values indicated herein and hereto represent the fair market value of those assets, subject to any further determination of such value by the Court at or prior to the hearing on confirmation of the Plan.

  H.  **Funding for the Plan**

The cash distributions contemplated by the Plan shall be funded by cash generated from the refinance of the Property.

  I.  **Absolute Priority Rule and New Value Exception**

Under section 1129 of the Bankruptcy Code, plans must be "fair and equitable" in order to be confirmed. Section 1129(b)(2)(B)(ii) provides guidance as to what constitutes "fair and equitable." It includes a requirement that junior classes of creditors and equity holders cannot receive property of a debtor during a reorganization, unless all senior classes either are paid in full or vote to accept the plan. This requirement is commonly referred to as the absolute priority rule.

The "new value" doctrine is a common law exception to the absolute priority rule. The basic concept behind "new value" is that equity holders may retain their interest in a debtor when they provide contribution, often in the form of capital, to the reorganization. Generally speaking, for the "new value" exception to apply, the value provided must be substantial, necessary, and reasonably equivalent to the value of the interest received in exchange.

As set forth in the Plan and herein, because all creditors will be paid in full under the Plan, the Debtors do not believe that the absolute priority rule is applicable.

### J.      Cramdown

The Plan does not impair any class of creditor and therefore all classes of creditors are deemed to accept the Plan. However, if the Plan were to be amended to impair any class, the Debtor would be requesting confirmation pursuant to the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that votes to reject the Plan.  Accordingly, upon confirmation by the Bankruptcy Court, the Plan will be binding on all creditors and Classes, even if they voted to reject the Plan.

### K.      Other Plan Provisions

Any executory contracts and unexpired leases that have not been previously assumed or rejected shall be deemed assumed on the Effective Date unless the Confirmation Order provides otherwise. All cure payments which are required by Section 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease shall be made by the Reorganized Debtors on the Effective Date or as soon as practicable thereafter.

**THE ABOVE SUMMARY IS A BROAD OUTLINE OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH HAS BEEN FILED CONTEMPORANEOUSLY HEREWITH.**

## V.   VOTING ON THE PLAN

Below is a summary of the Classes set forth in the plan and identification of which Classes are entitled to accept or reject the Plan:

- **Class 1 (Secured Claim of RGA)** is Unimpaired and deemed to accept the Plan.

- **Class 2 (Secured Claim of the Association)** is Unimpaired and deemed to accept the Plan.

- **Class 3 (General Unsecured Claims)** is Unimpaired and deemed to accept the Plan.

- **Class 4 (Equity Interests)** is Unimpaired and deemed to accept the Plan.

## VI. DISCUSSION OF BEST INTEREST OF CREDITORS: TREATMENT IN A CHAPTER 11 VS. CHAPTER 7

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditors hold liens. Administrative claims are paid next. Then unsecured creditors are paid from any remaining sales proceeds according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains, if any, after all creditors are paid.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. After considering the effect that a Chapter 7 liquidation would have on the value of the Debtor's estate, including the costs resulting from a Chapter 7 liquidation, and the adverse effect of a forced sale on the price of the Debtor's assets, the Debtor has determined that confirmation of the Plan will provide each holder of a claim with a recovery that substantially more than each such holder would receive in a liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code.

The Debtor's schedules show that in addition to the Property, its only other asset is a minimal amount of cash in the bank. The Debtor valued the Property at $40,656,000.00 in its schedules.

The Debtor has secured a loan which will provide an initial advance of up to $41,225,000.00, which will pay its creditors in full. Creditors will receive the same as they would receive under a Chapter 7 liquidation and are to be paid in full on the Effective Date. In a Chapter 7, creditors would not be paid in as expeditious a manner. The Debtor believes that this satisfies the Best Interests Test.

## VII. REFINANCE OF THE PROPERTY

The Debtor has secured a bridge-to-permanent loan with A10 Capital. The initial advance under the loan is $41,225,00.00. An appraiser has been engaged and the appraisal process has begun. The Debtor anticipates that the loan will close within 60 days of the completion of the appraisal. The Debtor will attach to this Disclosure Statement as **Exhibit B** the Terms Sheet for the loan.

## VIII. ANALYSIS OF CLAIMS AND APPROXIMATE DISTRIBUTIONS TO CREDITORS UNDER THE PLAN

A.  **Projected Administrative Claims**

The Debtor provides the following as an estimate of administrative expenses to be incurred in connection with confirmation of the Plan and closing of the bankruptcy estate:

| | |
|---|---|
| Bankruptcy Counsel fees and expenses | $ 40,000.00 |
| US Trustee's Fees | $ 160,250.00 |
| Total administrative expenses incurred in connection with confirmation and closing | **$ 200,250.00** |

B.  **Projected Priority Claims**

As of the date of this Disclosure Statement, the Debtor does not believe that any priority tax claims, nor any non-tax priority claims exist.

## IX. LITIGATION; BANKRUPTCY CAUSES OF ACTION; AND RECOVERY OF ASSETS

The Debtor knows of no litigation which will be instituted and/or continued against any party following confirmation of the Plan, except for routine claim objections which may be instituted against claimants whose claims may be disputed by the Debtor.

## X. INFORMATION RELEVANT TO THE RISKS POSED TO CREDITORS UNDER THE PLAN

The primary risk to creditors in this case is that the refinance of the Property will not close. However, the Debtor believes that this is a minimal risk. The loan has been investment committee approved. The Debtor has a good relationship with the lender and the appraisal process has begin. Although it is impossible to predict any unforeseen contingencies, the Debtor anticipates the closing of the refinance and payment to creditors within the timeframe contemplated in the Plan.

## XI. FEDERAL AND STATE TAX IMPLICATIONS TO CREDITORS

The Debtor is not aware of any adverse federal or state tax implications to creditors by virtue of the treatment of their claims under the Plan, except to the extent that any creditor has written off all or a portion of its claim against the Debtor as a bad debt.

**However, the Debtor does not warrant that there will be no tax implications to creditors resulting from confirmation of the Plan, and creditors should not rely on the Debtor's representations regarding potential tax consequences. Creditors are well-advised**

**to consult their tax advisors as to whether confirmation of the Plan could cause any adverse tax implications.**

The U.S. federal income tax consequences to a holder of a Claim (including the character, timing and amount of income, gain or loss recognized) will depend upon, among other things, (a) the manner in which you acquired a Claim; (b) the length of time that you have held the Claim; (c) whether you acquired the Claim at a discount; (d) whether you have taken a bad debt deduction with respect to the Claim (or any portion thereof) in current or prior years; (e) whether you have previously included in taxable income accrued but unpaid interest with respect to the Claim; and (f) your method of accounting.

## XII. DISCLAIMER

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "**SEC**") OR ANY OTHER SECURITIES REGULATORY AUTHORITY NOR HAS THE SEC OR ANY OTHER SECURITIES REGULATORY AUTHORITY PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS OR EQUITY INTERESTS OF THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY ENTITY FOR ANY OTHER PURPOSE.

THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE PLAN SUMMARY IN THIS DISCLOSURE STATEMENT. ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

AS TO CONTESTED MATTERS, EXISTING LITIGATION INVOLVING, OR POSSIBLE ADDITIONAL LITIGATION TO BE BROUGHT BY, OR AGAINST, THE DEBTOR, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, A STIPULATION, OR A WAIVER, BUT RATHER AS A STATEMENT MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT PURPOSES, WITH FULL RESERVATION OF RIGHTS, AND IS NOT TO BE USED FOR ANY LITIGATION PURPOSE WHATSOEVER BY ANY PERSON, PARTY OR ENTITY. AS SUCH, THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NONBANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY IN INTEREST, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, FINANCIAL OR OTHER EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR.

THIS DISCLOSURE STATEMENT CONTAINS FORWARD-LOOKING STATEMENTS BASED PRIMARILY ON THE CURRENT EXPECTATIONS OF THE DEBTOR AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AFFECTING THE FINANCIAL CONDITION OF THE DEBTOR. IN PARTICULAR, STATEMENTS USING WORDS SUCH AS "BELIEVE," "MAY," "ESTIMATE," "CONTINUE," "ANTICIPATE," "INTEND," "EXPECT" AND SIMILAR EXPRESSIONS IDENTIFY THESE FORWARD-LOOKING STATEMENTS. THESE FORWARD-LOOKING STATEMENTS ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS. IN THE LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD-LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS DISCLOSURE STATEMENT MAY NOT OCCUR, AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. CONSEQUENTLY, THE PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD-LOOKING STATEMENTS CONTAINED HEREIN SHOULD NOT BE REGARDED AS REPRESENTATIONS BY THE DEBTOR, ITS ADVISORS, OR ANY OTHER PERSON THAT THE PROJECTED FINANCIAL CONDITIONS OR RESULTS OF OPERATIONS CAN OR WILL BE ACHIEVED. EXCEPT AS OTHERWISE REQUIRED BY LAW, THE DEBTOR WILL NOT UNDERTAKE ANY OBLIGATION TO UPDATE OR REVISE PUBLICLY ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE FOLLOWING APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT.

NO STATEMENTS OR INFORMATION CONCERNING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY HAVE BEEN AUTHORIZED, OTHER THAN THE STATEMENTS AND INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE INFORMATION ACCOMPANYING THIS DISCLOSURE STATEMENT. ALL OTHER STATEMENTS REGARDING THE PLAN AND THE

TRANSACTIONS CONTEMPLATED THEREBY, WHETHER WRITTEN OR ORAL, ARE UNAUTHORIZED.

THIS DISCLOSURE STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SEC OR ANY OTHER GOVERNMENTAL AGENCY, NOR HAS THE COMMISSION OR ANY SUCH OTHER GOVERNMENTAL AGENCY PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN, SHOULD BE READ IN ITS ENTIRETY.  ADDITIONALLY, IT MAY BE ADVISABLE FOR CREDITORS TO CONSULT THEIR OWN COUNSEL OR OTHER ADVISORS WITH RESPECT TO THE MATTERS CONTAINED HEREIN.

NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS FUTURE BUSINESS OPERATIONS, FINANCIAL CONDITIONS, OR THE VALUE OF ITS PROPERTY ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO CREDITORS TO SECURE AN ACCEPTANCE OF THE PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION.

## XIII.  CONCLUSION

The Debtor submits that the Plan provides for an orderly and expeditious payment of all of its indebtedness to creditors. The Debtor further submits that the alternative of a Chapter 7 liquidation does not appear to be a viable method of maximizing recovery to creditors in this case, in that the added expense of administering a Chapter 7 and the fire-sale nature of Chapter 7 would decrease the amount that general unsecured creditors would receive in a Chapter 7 setting.

In the opinion of the Debtor, the Plan is the best available option for creditors because it will provide creditors payment in full in as expeditious a manner as possible.

Dated: December 30, 2022

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

*/s/ Elizabeth Childers*
William A. Rountree, Ga. Bar No. 616503
Will Geer, Ga. Bar No. 940493
Benjamin R. Keck, Ga. Bar No. 943504
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlklglaw.com
wgeer@rlklglaw.com
echilders@rlkglaw.com
*Attorneys for the Debtor*

# EXHIBIT A

## Anticipated Unsecured Claims

| Name | Anticipated Claim Amount |
|---|---|
| American Telecommunications Services Inc. | $4,575.20 |
| County Fire Equipment LLC | $278.50 |
| TefftNet, Inc. / IMPAK | $936.46 |
| Royal 400 Property Owner's Association, Inc. | $8,583.55 |
| Spectra Contract Flooring | $14,367.05 |
| United Fire Protection, Inc | $6,321.00 |
| A and S Lock and Safe | $638.09 |
| Convergint Technologies LLC | $1,330.00 |
| GA Granite | $3,271.94 |
| Monumental Equipment, Inc. | $2,979.38 |
| Pencor, LLC | $41,027.74 |
| Southern Inspection Group Inc. | $435.00 |
| The Tile Shop, LLC | $37,004.80 |
| Traditions In Tile | $7,535.24 |
| Capital City Mechanical Services, Inc. | $700.00 |
| Dogwood Facilities Services LLC | $14,175.00 |
| Hart Electrical Contractors, Inc. | $1,583.98 |
| Lipscomb & Pitts Insurance | $12,334.78 |
| Section 10, Incorporated | $2,925.00 |
| Superior Water Services Inc | $1,320.00 |
| Georgia Power | $114,712.10 |
| Waste Management | $488.43 |
| Fulton County Water | $4,186.95 |
| AT&T | $150.00 |
| AT&T | $1,247.04 |
| **TOTAL** | **$283,107.23** |

**EXHIBIT B**

**Terms Sheet**

**(TO BE SUPPLEMENTED)**